This is 4090749 Christian Assembly Church v. Key Outdoor. I'm here for the Appellant Wayne Young and for the Appellate James Ackerman. May it please the Court, Counsel. I'm here representing the Plaintiff Appellant from a decision of the trial court finding that the statute of frauds did not apply in this situation. The factual situation was presented by way of affidavits. The decision was made on cross motions for summary judgment. There really is no issue as to the facts. The question is whether or not a long-term lease produced by the defendant long after had been entered into by the pastor of the church was enforceable under the statute of frauds. The first position that the defendant took was that she had actual authority. And unless this Court declares that there is such a proposition of law, contrary to what I've been able to find, the pastor of a church is no different than any other agent. There has to be delegated authority and there is no pretense of even any actual authority for Nellie Rhodes in this instance as the pastor of the church to execute and enter into long-term leases contrary to the provisions of the statute of frauds. I think to me that one is just as plain as can be, even though the defendant continues to urge and claim that the pastor of the church has some sort of actual authority. Nobody denies that there was a lease of some sort of this billboard on the church's property. But contrary to the affidavits filed by the defendant, if you look back in time, the original lease was entered into by a company called Imperial. It was for one year. It was also signed by Nellie Rhodes purportedly as the owner of the property, but it was for one year. The only indicia of any action, and apparently what the trial court seized upon, was the acceptance of payments over a long period of time, some 13 years, periodic payments, principally monthly payments for the lease of this billboard. There is a suggestion that there has been some sort of reliance in trying to reach some sort of an estoppel issue, which the trial court really didn't use to make the decision. It just said the statute of frauds had no application here. The statute of frauds requires that there be not only a writing to bind the party to a long-term lease with an interest in land over in excess of a year, but a delegation of authority has to be in writing likewise. There was no such delegation of authority, and there's no question, but that she required a vote of the congregation of at least two-thirds of the membership present at a quorum at a meeting called for the purposes of approving such a contract. So the question then becomes, did the church engage in any kind of conduct which would give the defendant any reasonable basis to believe that she had some sort of authority? And the only thing anybody can point to is acceptance of periodic payments over a long period of time. And it wasn't until there was this letter issued in 2007 saying, we exercise our authority under the contract we have with you to extend this lease for an additional 15-year period that an inquiry was made by someone at the church, and they produced the contract, which had been signed by the previous pastor, saying that there had been this contract entered into in 2004. Wasn't the billboard erected on church property in plain view where everybody who's on the board of the church could see it? Sure. And on top of that, they took the money. 13 years, didn't they? Yes. But it's not inconsistent with a month-to-month lease. See, what they're trying to do is augment the fact of the billboard and saying we've made a huge investment. And that's wrong for a couple reasons. Number one, if you go back and look at the original lease that they purchased from Imperial, it was just for a one-year period. Renewable annually. Totally consistent with a month-to-month or annual lease or a periodic lease, which doesn't come under the statute of frauds. The second reason is it itself refers to an existing billboard. The words are different. It's called a placard or whatever. What's the date of that lease? Was there only one lease, the first one in 91? There was one in 91 that went on apparently until 2004 is when the successor to Imperial, which is the defendant here, went out and got a lease, again, signed by the pastor of the church. The problem is, and I think that the defendant itself was put upon some sort of duty of inquiry when they acquired this lease. It would have been such a simple matter. And certainly, you know, had they been advised by counsel who understood what he or she was doing, they would have said, look, get us an estoppel certificate from each of the owners, saying this is what the lease is, this is what's due on it, their current underpayments. And all those kinds of things. They were put upon some sort of a duty of inquiry. And there's no suggestion that there was ever any inquiry made of the church itself saying, you know, what are the terms and conditions of the lease? What is it that Imperial really has to sell us? And there is nothing except the payments of the periodic monies over a long period of time that anybody could seize upon. And the trial court did. It basically said you took the money, so you're stuck with the lease. That's not the question. Everybody acknowledges that there's the lease. The billboard is there, it's visible. Periodic payments are coming in. The question is, can they then produce a document signed by somebody who was never authorized by the congregation to say we now claim a 15-year lease on that billboard and we're going to lock it in, you know, for that period of time? That's the issue. That falls within the statute of frauds, clearly. There has to be a writing. Not only has to be a writing, but if there's a delegation of authority, it itself must be in writing. There is no such thing here. And therefore, it's our contention that the trial court erred as a matter of law by finding and holding that there was, you know, he didn't say it, but essentially saying it was an estoppel argument. He said the statute of frauds did not apply. I think statute of frauds clearly applies. It requires a writing, there's an interest or an estate in land for a period exceeding one year. You know, that's one basis under statute of fraud. The second basis is if there's going to be such a document signed by an agent, the agent must also be authorized in writing. As we point out in the brief, even a spouse has to have a delegation of authority in writing to bind the spouse to such an interest in land. And so for all of those purposes, Your Honor, we submit that the trial court erred, and we ask that you reverse the trial court with directions to find and hold that this lease is void for want of conformity to the statute of frauds. Unless you have any questions, that really concludes my argument. Thank you very much. Mr. Ackerman? Thank you. May it please the Court? This is not a situation where we have 13 years. The Court found 17 years that the Church had been accepting payments. They accepted $1,600 per year payments up through January of 2004. In January of 2004, Nellie Rhodes signed a new contract. This changed payments from $1,600 per annum, one check per year, to $1,283.33 payments. So the Church was getting a different amount of the check. They also got $2,200 a year as income as opposed to $1,600 per year. So they might have a better argument had the terms not changed all of a sudden. Regardless, I don't know that they would have a very good argument, but given the situation that terms changed in 2004 and they accepted 48 more payments after that, it seems to me an odd contention that they didn't know that there were new terms. They don't contend that Pastor Rhodes was not an agent of theirs. They don't contend she wasn't a pastor. They don't even contend she didn't have a parent authority to buy. They don't deny that she signed the contract. All they say is, we don't like the terms of it, and we didn't do what we should have done as a board and checked out what she did and why these terms changed, and so therefore we want to undo what we've been doing for the last 17 years. I think that's a tough position for them to take. This isn't a situation where the church came in and said, we wanted to know why the terms changed in 2004. We think we've got a rogue pastor who did something wrong. We don't agree with what she did, and we want to undo what she did immediately. Instead, they took 48 payments, and now they want to, after they've had a long-term 17-year agreement with the billboard that sits on their church property, they want to undo the contract that they had done for so long. I don't think that's appropriate. I think the trial court was completely right in its decision. I'd ask you to affirm. Thank you. Thank you, Mr. Ackerman. Rebuttal? Very briefly, the council suggested that there were annual payments made after 2000, but the contract actually calls for monthly payments, so there may have been a slight increase in monthly payments. Nevertheless, there were still periodic payments being made, which is not inconsistent with the month-to-month lease. And if you look at the pleadings themselves, the defendant acknowledges that it was not until the letter was sent, they admit that an inquiry was made by the church. On what basis are you making this claim? What lease did they actually then produce that? And that's admitted in the pleadings. So it wasn't until 2007 that there was any actual knowledge of anything other than this billboard out there for which they were getting monthly payments, and there was now a claim that there was a binding contract that would extend that lease of that billboard for another 15-year period, which is in complete nonconformity with the contract itself. The contract is fuzzy by itself. If you look at the signature block, it's really, it pretends at least, that the signature block looks like the Christian Assembly is leasing this billboard, which isn't the case at all. So, I mean, there was, he was certainly guilty of very sloppy work. They made no inquiry, and we submit they ought to be stuck with the folly of dealing with someone who has no authority. Thank you. Thank you, Mr. Young. We'll take this matter under advisement.